**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| JOSEPH FOTE, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) Plaintiff, ) ) vs. ) ) GLOBAL TRUST MANAGEMENT LLC and ) NATIONAL CREDIT ADJUSTERS LLC, ) ) ) Defendants. ) | Case No.: 18-cv-1778 **CLASS ACTION COMPLAINT** **Jury Trial Demanded** |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.      Plaintiff Joseph Fote is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5.      Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that he engaged in a consumer transaction.

6. Defendant Global Trust Management, LLC ("GTM") is a foreign limited liability company with its principal offices located at 4805 West Laurel Street, Suite 300, Tampa, Florida 33607.

7. GTM engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. GTM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. GTM is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant National Credit Adjusters, LLC ("NCA") is a foreign limited liability company with its principal offices at 327 West 4th Avenue, Hutchinson, Kansas 67501.

11. NCA is engaged in the business of collecting debts, originally owed to others and acquired after default, which were incurred for personal, family or household purposes.

12. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

13. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Tepper v. Amos Fin., LLC*, 2018 U.S. App. LEXIS 21907, at *16 (3d Cir. Aug. 7, 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the

2

FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *Torres v. LVNV Funding LLC*. 2018 U.S. Dist. LEXIS 49885, at *13-15 (N.D. Ill Mar. 27, 2018); *Hordgev. First Nat'l Collection Bureau, Inc.*, 2018 U.S. Dist. LEXIS 132435, at *12-13 (S.D. Tex. Aug. 7, 2018); *Meola v. Asset Recovery Solutions*, 2018 U.S. Dist. LEXIS 139101, at *13-18 (E.D.N.Y. Aug. 15, 2018).

14.     The primary purpose of NCA's business, and NCA's principal purpose, is the collection of consumer debts.  *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

15.     NCA's website states:

> Since 2001, National Credit Adjusters has specialized in delinquent account receivables bringing integrity, and the highest standards of compliance, to debt servicing.

> National Credit Adjusters is a privately held company founded on wholesome family values and conducts business with respect, dignity, and fairness.  NCA is a recognized leader in the procurement of delinquent account receivables and helping creditors liquidate these receivables through extensive training, innovation, automation and analytics.

http://www.ncaks.com/about.htm (June 25, 2018).

16.     In addition to telephone and mail-based debt collection activities, NCA is a frequent litigant in Wisconsin courts. A general search on Wisconsin Circuit Court Access ("CCAP") for "National Credit Adjusters*" returns more than 1,100 small claims cases filed by

NCA. Upon information and belief, virtually all or actually all of those cases are collection actions against Wisconsin consumers.

17. NCA uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

18. NCA is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3). *See, e.g., Brunett v. Nat'l Credit Adjusters LLC*, 2018 U.S. Dist. LEXIS 44986, at *2-3 (E.D. Wis. Mar. 20, 2018) ("This information demonstrates that Defendant's conduct violated by the FDCPA and the TCPA, and that Plaintiff is entitled to statutory damages under each statute. It further shows that Plaintiff may recover at least the amounts she seeks.").

19. A company meeting the definition of a "debt collector" (here, NCA) is vicariously liable for the actions of a second company (here, GTM) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (*citing Pollice*, 225 F.3d at 404-05).

## FACTS

20. On or about December 1, 2017, NCA mailed a debt collection letter to Plaintiff regarding an alleged debt with original creditor "RISE FINANCIAL LLC D/B/A RISE CREDIT" ("Rise"). A copy of this letter is attached to this complaint as Exhibit A.

21. Upon information and belief, the alleged debt referenced in Exhibit A was a personal consumer loan, which was incurred for personal, family, or household, including paying bills and other personal consumer loans.

22. Upon information and belief, Exhibit A is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

4

23.     Upon information and belief, <u>Exhibit A</u> is a form debt collection letter, used by NCA to attempt to collect alleged debts.

24.     Upon information belief, <u>Exhibit A</u> was the first written communication that NCA mailed to Plaintiff regarding this alleged debt.

25.     <u>Exhibit A</u> contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send within five days of the initial communication:

Unless you notify this office within thirty days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will assume this debt is valid.

If you notify this office in writing within thirty days after receiving this notice that the debt or any portion of it is disputed, this office will obtain and mail you a copy of verification of the debt or a copy of a judgment against you. If requested by you in writing within thirty days of receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

<u>Exhibit A</u>.

26.     The header in <u>Exhibit A</u> also contains the following:



<u>Exhibit A</u>.

27.     The body of <u>Exhibit A</u> contains the following:

Welcome, Joseph. We are now servicing your delinquent account. All future payments and correspondence should be addressed to us. If you do not dispute this account (see dispute procedures below) and you'd like to resolve this, please reach out to us.

Skilled agents are ready to listen to your individual situation to find a solution that fits the needs of both you and NCA.

Sincerely,
          National Credit Adjusters

5

Exhibit A.

28.     Exhibit A further states:

**Disclosures:** This communication is from a debt collector.

Exhibit A.

29.     On its face, Exhibit A fails to state the name of the creditor to whom the debt is owed in a non-confusing manner.

30.     Exhibit A states that, if the consumer submits a written request within thirty days of receipt, "this office will provide you with the name and address of the original creditor, if different from the *current creditor*." Exhibit A (emphasis added).

31.     Exhibit A states that the "Original Creditor" is "Cash Central" but does not state a "Current Creditor."

32.     Exhibit A states that the "Current Owner" is NCA.

33.     Exhibit A also states that the debt is "Serviced By" NCA, and that NCA is "now servicing your account."

34.     Exhibit A further states that NCA is "a debt collector."

35.     The unsophisticated consumer understands that the rights to service debts like the one referenced in Exhibit A are distinct assets or liabilities, and that one entity may "own" the right to service (*i.e.,* collect) the debt while another entity continues to hold the debt by contractually separating those servicing rights:

> Companies recognize servicing rights as distinct assets or liabilities when ownership of those rights is contractually separated from ownership of the underlying loan.

*See, e.g.,* https://en.wikipedia.org/wiki/Loan_servicing; *see also, Unifund CCR Partners v. Shah*, 993 N.E.2d 518, 521 (Ill. Ct. App. 2013) ("debts like the one in this case are a type of intangible

6

personal property known as a chose in action, which is not only assignable but is traditionally understood as having bifurcated title: legal title and equitable title.")

36.     A creditor has three general options with respect to debt collection:

> First, the creditor may try to collect the debt itself by bringing an action in its own name against the debtor. Alternatively, the creditor may hire a third party, known as a collection agent, to pursue the lawsuit against the debtor. In this situation, the creditor assigns legal title in the debt to the collection agent but retains equitable title for itself. This type of partial assignment is known as an assignment for collection. Finally, the creditor may decide to sell off its entire interest in the account to a third party, commonly known as a debt buyer. By doing so, the creditor divests itself of both legal and equitable title and retains no ownership interest in the debt.

*Shah*, 993 N.E.2d at 521.

37.     It is not uncommon for debt collectors who have received an "assignment for collection" to identify the current creditor (*i.e.,* the entity that retained equitable title) as the "original creditor." *E.g., Smith v. Simm Assocs.*, 2018 U.S. Dist. LEXIS 5638, at *1 (E.D. Wis. Jan. 12, 2018).

38.     On its face, <u>Exhibit A</u> is confusing as to whether the "Current Owner" (*i.e.,* NCA) owns *the debt itself* or just the rights to *service* the debt. *See, e.g., Gritters v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 63010, at *21-22 (N.D. Ill. Apr. 13, 2018) (debt collector improperly identified the servicer of the account as the creditor to whom the debt itself was owed).

39.     A debt collector does not disclose the identity of the creditor by naming an entity without explicitly or implicitly making it clear that the entity is the *current creditor* to whom *the debt itself* is owed. *E.g., Janetos v. Fulton, Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016); *Gritters*, 2018 U.S. Dist. LEXIS 63010, at *21-22 ("whether Gritters . . . could have figured it out despite what Pierce had written, is all beyond the point. 'A lucky guess would have nothing to do with any disclosure the letters provided. Compliance with the clear

7

requirements of § 1692g(a)(2) demands more.'  By failing to clearly disclose the name of 'the *creditor* to whom the debt is owed,' Pierce's validation notice violated the Act, without any need for extrinsic evidence of confusion.") (emphasis added) (citing and quoting *Janetos*).

40.     Based on <u>Exhibit A</u>, the "Original Creditor" (*i.e.,* Rise) may have retained equitable title to the debt but assigned legal title to the "Current Owner" and "debt collector" (NCA).  *See, e.g., Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *3 (N.D. Ill. Oct. 20, 2011) (the "unsophisticated consumer might just as reasonably conclude that what she believed to be a single debt was now owed to two separate companies [the current creditor and the original creditor].").

41.     Based on <u>Exhibit A</u>, the "Original Creditor" (*i.e.,* Rise) may also have divested itself of both legal title and equitable title, and sold off its entire interest in the debt's receivables to the "Current Owner" (*i.e.,* NCA).

42.     Upon information and belief, the Original Creditor actually assigned ownership of the debt's receivables, and GTM is actually the creditor to whom the debt is owed.

43.     The apparent contradiction between the terms "Original *Creditor*" and "Current *Owner*" is confusing and misleading to the unsophisticated consumer, who would understand the term "owner" had some meaning other than "creditor."  *See, e.g., Francisco v. Doctors & Merchants Credit Serv.*, 1998 U.S. Dist. LEXIS 12234, at *20 (N.D. Ill. July 29, 1998) ("apparent contradictions are thought to evidence per se 'confusingness,' to borrow Judge Posner's phrase."); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132-33 (E.D.N.Y. 2007) ("The fact that the sentence states that CHASE 'sold' the debt and that the debt was 'assigned' to Defendant . . . potentially implies that a 'sale' of the debt is different from an 'assignment' of the debt.").

8

44.     A debt collector does not state the name of creditor in a non-confusing manner if it represents that the debt's "original creditor" is one entity, and that another entity is the "current owner" and the "servicer," unless it explains the extent of the "current owner's" ownership rights.  *See, e.g., Dewees*, 506 F. Supp. 2d at 132-33 (statement that "The debt identified was sold by CHASE, all of your rights and obligations regarding this contract have been assigned to this office" did not clearly disclose the identity of the creditor); *Walls v. United Collection Bureau, Inc.*, 2012 U.S. Dist. LEXIS 68079, at *5-6 (stating an entity was the "Current Owner" of the debt did not identify the creditor clearly where the letter implied another entity could be the creditor); *Deschaine v. Nat'l Enter. Sys.*, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013) ("Naming an entity as 'Client' and a different entity as 'Current Creditor' especially where the 'Client' is named more often than the 'Current Creditor' plausibly could create confusion . . ."); *Aribal v. GMAC Mortg.*, 2013 U.S. Dist. LEXIS 105355, at *12-13 (N.D. Ill. July 29, 2013) ("although it identifies Partners as a creditor[,] the language suggests that another entity, namely, the recorded holder of the security deed, may also be a potential creditor."); *Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *3 (N.D. Ill. Oct. 20, 2011) (letter identifying LVNV as the creditor, but attempting to collect consumer's "delinquent CITIBANK account" on behalf of debt buyer did not disclose name of creditor because the "unsophisticated consumer might just as reasonably conclude that what she believed to be a single debt was now owed to separate companies (LVNV and Citibank).  Such confusion might cause an unsophisticated consumer to be concerned about the possibility she was being defrauded or that she might pay the incorrect creditor and continue to have outstanding debt."); *Pardo v. Allied Interstate, LLC*, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015) ("the inclusion of two entities who are willing to accept payment on the debt might lead an unsophisticated consumer to conclude that his debt was now owed to two

9

separate companies (LVNV and Resurgent Capital).”); *Wong v. Phelan Hallinan & Diamond, PC*, 2015 U.S. Dist. LEXIS 82986, at \*14-16 (D.N.J. June 25, 2015) (plaintiff stated FDCPA claims where collection letter incorrectly identified loan servicer as creditor to whom the debt was owed); *Brinkmeier v. Round Two Recovery, LLC*, 2016 U.S. Dist. LEXIS 97664, at \*14-16 (E.D.N.Y. July 25, 2016) (debt collection letter that identified one entity as the “Creditor” and another entity as “the legal owner” was confusing and misleading as to the name of the creditor).

45.     The term “Current Owner” does not effectively disclose to the unsophisticated consumer the name of the creditor to whom the debt is owed:

> Defendants assert repeatedly that the letter is not confusing because it accurately specifies that LVNV is the ‘current owner of the debt.’  First, LVNV is not so identified.  The letter refers to LVNV simply as ‘Current Owner.’  Current owner of *what?*, a significant number of unsophisticated debtors might reasonably ask themselves.  Second, defendants ignore the plain language of the statute, which requires that the ‘creditor to whom the debt is owed’ be identified, not the ‘current owner of the debt.’   This statutory language makes sense because an unsophisticated consumer likely does not ask himself, ‘Who owns the debt?’ or think about debt in terms of ‘ownership.’  Rather, he wants to know who is owed the money.  In addition, the letter’s designation of the ‘original creditor’ can be viewed as making the letter even more confusing in light of the fact that no phrase like ‘current creditor’ is used.

*Walls*, 2012 U.S. Dist. LEXIS 68079, at \*4-5; *see also, Zuniga v. Asset Recovery Solutions*, 2018 U.S. Dist. LEXIS 51063, at \*8 (N.D. Ill. Mar. 28, 2018) (“using the phrase ‘current owner’ instead of current creditor,” is “ambiguous in reporting who is the current creditor.”) (quoting *Walls*, 2012 U.S. Dist. LEXIS 68079, at \*4-5).

46.     The unsophisticated consumer would not know whether GTM was the “creditor to whom the debt was owed” or was a “debt collector” who was servicing the debt for some other creditor.  *Cf., e.g., Zuniga*, 2018 U.S. Dist. LEXIS 51063, at \*9 (“the letter plainly identified the entity to whom the debt was owed by using the words “Current Creditor” right next to Bureaus

Investment Group Portfolio No. 15 LLC."); *Suellen v. Mercantile Adjustment Bureau, LLC*, 2012 U.S. Dist. LEXIS 98640, at *16 ("Mercantile's letter clearly names EAF as the 'current creditor' of the account, and the body of the letter states that the account is owed to EAF.").

47.     It is especially important that a debt buyer servicing its own debts clearly identify itself as the creditor to whom the debt is owed because the statement that "'[t]his communication is from a debt collector' . . . suggests that the letter is being sent by an agent for the creditor—specially retained for the purpose of collecting the debt—as opposed to the creditor." *Dewees*, 506 F. Supp.2d at 133.

48.     Where a debt buyer is collecting on its own behalf, the statement that "this office will provide you with the name and address of the original creditor, *if different from the current creditor*" (emphasis added) suggests to the unsophisticated consumer that the original creditor and the current creditor are the same entity because the qualification is unnecessary surplusage when a debt buyer is collecting on its own behalf since the original creditor will always be different from the third-party debt buyer.

49.     Upon receiving Exhibit A, the unsophisticated consumer would be confused as to the name of the creditor to whom the debt was owed, and whether the debt's receivables had been assigned outright to NCA or some undisclosed third-party.

50.     Upon receiving Exhibit A, the unsophisticated consumer would not know whether Exhibit A was attempting to collect a debt on behalf of NCA, the original creditor, or some undisclosed third-party debt buyer.

51.     Moreover, Exhibit A also states that the "Date of Last Payment to Original Creditor" was August 16, 2017.

52.     Exhibit A also states the following:

11

*As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. We will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described above.*

Exhibit A.

53.     On or about June 8, 2018, GTM mailed a debt collection letter to Plaintiff regarding the same alleged debt, allegedly owed to NCA, and allegedly originally owed to Rise. A copy of this letter is attached to this complaint as Exhibit B.

54.     Upon information and belief, Exhibit B is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

55.     Upon information and belief, Exhibit B is a form debt collection letter, used by GTM to attempt to collect alleged debts.

56.     Upon information belief, Exhibit B was the first written communication that GTM mailed to Plaintiff regarding this alleged debt.

57.     Exhibit B contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send within five days of the initial communication:

Unless you notify this office within thirty days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will assume this debt is valid.  If you notify this office in writing within thirty days after receiving this notice that the debt or any portion of it is disputed, this office will obtain and mail you a copy of verification of the debt or a copy of a judgment against you.  If requested by you in writing within thirty days of receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit B.

58.     Exhibit B also contains the following:



PO Box 26244 / 4805 W Laurel ST STE 300
Tampa, FL 33623-6244 / Tampa, FL 33607
Toll Free: 1-844-421-7498
Fax: 813-289-2523
www.gtmcorporation.com

| GTM Acct # | █████7077 |
| Current Balance: | $2,017.80 |
| Original Creditor: | RISE FINANCIAL LLC D/B/A RISE CREDIT |
| Date of Last Payment to Original Creditor: | N/A |
| Original Acct #: | ████228 |
| Current Owner: | National Credit Adjuster LLC |
| Serviced By: | GLOBAL TRUST MANAGEMENT, LLC |

Exhibit B.

59.    Exhibit B states that the "Current Owner" is "National Credit Adjuster LLC," that the "Original Creditor" of the debt is Rise, that the debt is being "Serviced By" GTM, and that the "Current Balance" is $2,017.80.

60.    Exhibit B also states that the "Date of Last Payment to Original Creditor" was "N/A."

61.    Exhibits A and B together are false, deceptive, misleading, and confusing to the unsophisticated consumer because they contains false and conflicting statements about character of the account.

62.    Exhibit A states that the "Date of Last Payment to Original Creditor" was August 16, 2017, but Exhibit B states that the "Date of Last Payment to Original Creditor" was "N/A."

63.    The consumer has either paid the original creditor or he has not.

64.    If the consumer did not actually tender a payment to the original creditor on August 16, 2017, the "Date of Last Payment to Original Creditor" stated in Exhibit A is false, deceptive, misleading, and confusing.

13

65.     If the consumer did actually tender a payment to the original creditor on August 16, 2017, the "Date of Last Payment to Original Creditor" stated in Exhibit B (*i.e.,* "N/A") is false, deceptive, misleading, and confusing.

66.     In either case, the unsophisticated consumer presented with a debt collection letter that falsely stated that he did (or did not) make a payment on an account would be confused and misled about the account's history.  *See, e.g., Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) (account history information is not "irrelevant" simply because the consumer can consult his own records to obtain clarification); *Smith v. Am. Revenue Corp.*, 2005 U.S. Dist. LEXIS 48680, at *18-19 (N.D. Ind. May 16, 2005) (same) (citing *Fields*, 383 F.3d at 566).

67.     Moreover, Exhibit A states that "a negative credit report reflecting on your credit record may be submitted to a credit reporting agency[.]"

68.     The unsophisticated consumer understands that the date of last payment of a debt is a material aspect of the debt, and has a material effect on the consumer's credit report.  *E.g., Brancato v. Specialized Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 96658, at *12-13 (D.N.J. June 8, 2018).

69.     In light of the contradictory statements in Exhibits A and B, the consumer would feel threatened with the prospect of false information on his credit report.  *Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. June 7, 2010) ("It is undisputed that on April 18, 2009, the Photographers faxed A & S a debt information form containing accurate information regarding the date of delinquency and last payment date of the debt and that on June 19, 2009, A & S furnished different and false information to Equifax.  A & S does not contest that its communication to Equifax was material, nor could it since the communication affected Daley's ability to choose intelligently how to handle her debt situation.").

14

70.    The false and contradictory "Dates of Last Payment" are material to the consumer because they have important implications for consumer credit reporting and the date on which the statute of limitations begins to run.  *See Slick v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 900, 904-05 (N.D. Ill. June 30, 2015); *Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072, 1086-87 (N.D. Ill. July 7, 2014); *see also, e.g., Agosta v. InoVision, Inc.*, 2003 U.S. Dist. LEXIS 23889, at *13-15 (E.D. Pa. Dec. 16, 2003); *Brandon v. Fin. Accounts Servs. Team*, 701 F. Supp. 2d 990, 99-93 (E.D. Tenn. Mar. 24, 2010); *Caulton v. Merchants' Credit Guide Co.*, 2007 U.S. Dist. LEXIS 12577, at *1-2 (N.D. Ill. Feb. 22, 2007).

71.    Moreover, the false and contradictory "Dates of Last Payment" are material to the consumer because they call into question whether other information in Exhibit A --- including the balance stated --- was actually correct or was based on incorrect payment processing.

72.    Additionally, the conflicting "Date of Last Payment" information stated in Exhibits A and B would leave consumers baffled and wondering whether the letter was legitimate, or had ever been sold.  *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324-25 (7th Cir. 2016) (observing that false or confusing account information may signal that the debt collector was not acting legitimately); *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1120 (9th Cir. 2014) (same); *Derosia v. Credit Corp. Sols.*, 2018 U.S. Dist. LEXIS 50016, at *9-10 (E.D. Wis. Mar. 27, 2018) (same); *Pardo v. Allied Interstate, LLC*, 2015 U.S. Dist. LEXIS 125526, at *6 (S.D. Ind. Sept. 21, 2015); *Green v. Monarch Recovery Mgmt.*, 2015 U.S. Dist. LEXIS 98765, at *15 (S.D. Ind. July 29, 2015); *Dilallo v. Miller & Steeno, P.C.*, 2016 U.S. Dist. LEXIS 116188, at *6 (N.D. Ill. Aug. 30, 2016) (same); *Walls v. United Collection Bureau, Inc.*, 2012 U.S. Dist. LEXIS 68079, at *5-6 (N.D. Ill. May 16, 2012) (same); *Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *4 (N.D. Ill. Oct. 20, 2011) (same).

73.     The contradictory "Last Payment Dates" stated in Exhibits A and B are especially confusing and misleading because the alleged debt is a personal consumer loan account, and consumers often secure new consumer loans to make payments and avoid delinquency on prior consumer loans, often from the same lender. *E.g.,* Wis. Stat. § 138.14(7)(d)(7) ("The Division [of Banking] shall submit an annual report . . . that includes . . . the number of payday loans made during the preceding year that were repaid with the proceeds of a subsequent payday loan."); *see also, e.g., James v. Nat'l Fin., LLC*, 132 A.3d 799, 831 n.29 (Del. Ch. Ct. Mar. 14, 2016) ("consumers who borrow at high rates . . . generally end up in a cycle of increasing debt that culminates in default."); *Cash Am. Net of Nev., LLC v. Dep't of Banking*, 978 A.2d 1028, 1040 (Pa. Cmwlth. Ct. July 10, 2009) ("payday lending can set a trap for the financially vulnerable and unwary who may find themselves in a no-exit cycle of debt.  Specifically, by using a paycheck to repay a loan, the payday borrower is left with too little remaining in the paycheck to meet ongoing obligations.  The borrower then enters into another payday loan. Soon, instead of living paycheck to paycheck, these borrowers find themselves living payday loan to payday loan."), *aff'd by, Cash Am. Net of Nev., LLC v. Commonwealth*, 8 A.3d 282 (Pa. 2010).

74.     Moreover, Exhibit A identifies the "Current Owner" as "National Credit Adjusters, LLC" but Exhibit B identifies the "Current Owner" as "National Credit Adjuster, LLC."

75.     Exhibit B states a "GTM Acct #" and an "Original Acct #" but does not state an NCA or "Current Creditor" account number.

76.     Consumers understand that consumer fraud is rampart in the debt buying industry, where even legitimate debts may lead to fraud because they may be sold to more than one purchaser at a time:

Americans are currently late on more than $600 billion in bills, according to Federal Reserve research, and almost one person in 10 has a debt in collectors' hands. The agencies recoup what they can and sell the rest down-market, so that iffier and iffier debt is bought by shadier and shadier individuals. Deception is common. Scammers often sell the same portfolios of debt, called "paper," to several collection agencies at once, so a legitimate IOU gains illegitimate clones.

https://www.bloomberg.com/news/features/2017-12-06/millions-are-hounded-for-debt-they-don-t-owe-one-victim-fought-back-with-a-vengeance.

77. The confusion engendered by Exhibits A and B is material because the unsophisticated consumer would be concerned about the possibility of having to pay the same debt twice, even assuming Defendants were not purposefully acting in bad faith. *Janetos*, 825 F.3d at 324-25; *see also, FTC v. Swatsworth*, 2018 U.S. Dist. LEXIS 142696, at *4 (W.D.N.C. Aug. 22, 2018) ("The loan information contained in the Portfolio that Defendants purchased was falsified. . . . No legitimate 500FastCash loans were ever sold to SQ Capital or Defendants.").

78. Plaintiff was confused and misled by Exhibit A.

79. The unsophisticated consumer would be confused and misled by Exhibit A.

80. Plaintiff had to spend time and money investigating Exhibit A.

### *The FDCPA*

81. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist.

17

LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA

18

statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

82.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

83.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

84.     15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

85. 15 U.S.C. § 1692e(8) specifically prohibits "communicating or threatening to communicate to any person credit information which is known to be false, including the failure to communicate that a disputed debt is disputed."

86. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

87. 15 U.S.C. § 1692f generally prohibits any "unfair or unconscionable means to collect or attempt to collect a debt."

88. 15 U.S.C. § 1692g states:

> a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;

### The WCA

89. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

90. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

20

91.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

92.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives."  *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

93.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

94.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]."  Wis. Stat. § 421.106(1).

95.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

96.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

97.    Wis. Stat. § 427.104(1)(c) states that a debt collector may not: "Disclose or threaten to disclose information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false."

98.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

99.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

100.    The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I -- FDCPA

101.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

102.    Exhibit A states that Rise is the "Original Creditor" and that National Credit Adjusters, LLC is the "Current Owner," servicer, and debt collector

103.    Exhibit B states that Rise is the "Original Creditor," that National Credit Adjuster, LLC is the "Current Owner," and that GTM is the servicer and debt collector.

104.    Neither Exhibit A nor Exhibit B states whether the "Original Creditor" sold the debt to the "Current Owner" outright or retained an equitable interest in the debt but assigned servicing rights.

22

105.     Neither Exhibit A nor Exhibit B defines the scope of the rights of the "Current Owner."

106.     Neither Exhibit A nor Exhibit B states the name of the creditor to whom the debt is owed in a non-confusing manner.

107.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(2).

## COUNT II -- FDCPA

108.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

109.     Exhibits A and B contain false, deceptive, misleading, and confusing statements about the amount, character, and legal status of the debt, and the date of last payment.

110.     Exhibits A and B threaten the consumer with the reporting of false information on the consumer's credit report.

111.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692f, and 1692g(a)(1).

## COUNT III -- WCA

112.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

113.     Exhibits A and B contain false, deceptive, misleading, and confusing statements about the amount, character, and legal status of the debt, and the date of last payment.

114.     Exhibits A and B threaten the consumer with the reporting of false information on the consumer's credit report.

115.    Defendants violated Wis. Stat. §§ 427.104(1)(c), 427.104(1)(g), and 427.104(1)(h).

**CLASS ALLEGATIONS**

116.    Plaintiff brings this action on behalf of four Classes.

117.    Class I ("Nationwide Name of Creditor Class") consists of (a) all natural persons in the United States of America (b) who were sent a series of collection letters in the form represented by Exhibits A and B to the Complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) and the letter in the form of Exhibit B was mailed between November 9, 2017 and November 9 2018, (f) and neither letter was returned by the postal service.

118.    Class II ("Wisconsin Name of Creditor Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters in the form represented by Exhibits A and B to the Complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) and the letter in the form of Exhibit B was mailed between November 9, 2017 and November 9 2018, (f) and neither letter was returned by the postal service.

119.    Class III ("Nationwide Payment Date Class") consists of (a) all natural persons in the United States of America (b) who were sent a series of collection letters in the form represented by Exhibits A and B to the Complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) where the letter in the form of Exhibit A stated that a "Date of Last Payment to Original Creditor," (e) but the letter in the form of Exhibit B stated that the "Date of Last Payment to Original Creditor" was "N/A," (e) and the

letter in the form of <u>Exhibit B</u> was mailed between November 9, 2017 and November 9 2018, (f) and neither letter was returned by the postal service.

120.   Class IV ("Wisconsin Payment Date Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters in the form represented by <u>Exhibits A and B</u> to the Complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) where the letter in the form of <u>Exhibit A</u> stated that a "Date of Last Payment to Original Creditor," (e) but the letter in the form of <u>Exhibit B</u> stated that the "Date of Last Payment to Original Creditor" was "N/A," (e) and the letter in the form of <u>Exhibit B</u> was mailed between November 9, 2017 and November 9 2018, (f) and neither letter was returned by the postal service.

121.   Each Class is so numerous that joinder is impracticable.   On information and belief, there are more than 50 members of each Class.

122.   There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants violated the FDCPA and/or the WCA.

123.   Plaintiff's claims are typical of the claims of the Class members.   All are based on the same factual and legal theories.

124.   Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

125.   A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## <u>JURY DEMAND</u>

126.   Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  November 9, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com